STATE of Iowa, Appellee-Cross
Appellant,

v.

Gary Patrick LEKIN, Appellant-Cross
Appellee.

No. 60862.

Supreme Court of Iowa.

Nov. 22, 1978.

**698**

Robert E. Sosalla, Cedar Rapids, for appellant-cross-appellee.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., Eugene J. Kopecky, County Atty., and Denver D. Dillard, Asst. County Atty., for appellee-cross-appellant.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for assault with intent to inflict great bodily injury in violation of § 690.6, The Code, 1975. The only question he raises is whether the testimony of an alleged accomplice was corroborated. We find sufficient corroboration and therefore affirm on defendant's appeal.

The State cross-appeals from an order sustaining a demurrer to two additional counts in the county attorney's information by which defendant was charged. We find the State's cross-appeal is untimely and therefore dismiss it.

All references to Iowa statutes in this opinion are to the 1975 Code.

I. *Defendant's appeal.* Principles applicable to determining whether an accomplice's testimony has been corroborated as required by § 782.5, The Code, have been discussed in numerous cases and need not be repeated here. See *State v. Vesey,* 241 N.W.2d 888 (Iowa 1976); *State v. Bizzett,* 212 N.W.2d 466 (Iowa 1973); *State v. Nepple,* 211 N.W.2d 330 (Iowa 1973).

In the present case, viewing the evidence in its light most favorable to the verdict, ample corroborative evidence existed to link defendant to the offense.

The State sought to convict defendant on a theory of aiding and abetting.

Defendant and his friend Joe Zalesky went to the Cedar Rapids home of Robert Maddox at approximately 9:00 p. m. on January 30, 1977. Maddox testified that Zalesky hired him during a conversation which occurred there out of defendant's presence to kill Ronald Hopp who had allegedly been informing the police about "drug deals". Zalesky promised to pay him with $1500 cash, $500 worth of cocaine, and two pills of heroin, one before and one after the killing. During a brief absence of Zalesky, Maddox then had a conversation with defendant who said he had someone for Maddox "to take care of", which Maddox assumed also meant Hopp. Defendant and Zalesky left the Maddox home but returned approximately one-half hour later.

The three men then went to the home of David Young, a friend of Hopp. Maddox said Young was to be used to get him into Hopp's home. He said Zalesky gave him a heroin pill on the way to Young's house.

Young, whom the jury could find was not an accomplice, testified that defendant and Zalesky had previously been at his home in the late afternoon of the same day. He said defendant on that occasion asked him whether he had told the police about a gun of defendant's and Zalesky asked Young whether he had been talking to the police about drug traffic. Young testified he denied discussing these things with the police. He said Zalesky mentioned that Ronald Hopp had been talking to the police and either defendant or Zalesky commented about sending to Chicago for someone to take care of Hopp. However, he asserted Zalesky then said, "To hell with that; we'll do it tonight."

Young testified that when defendant and Zalesky returned to his home in the evening with Maddox, Zalesky introduced Maddox

as "the guy that's going to take care of everything." Maddox went into a bathroom to "shoot" the heroin Zalesky had given him. Zalesky accompanied him and gave him a loaded pistol. Meanwhile defendant and Young conversed in the living room. Young testified he made a motion with his finger in an effort to learn whether a gun was going to be used against Hopp. He said defendant shook his head in a way which Young took as meaning both "no" and "I don't know".

Maddox testified that either defendant or Zalesky was to call Hopp's home and then leave the phone off the hook in an effort to tie up Hopp's line so he could not call the police. He said he thought Zalesky left before the call was made. Young testified Zalesky did not make the call before leaving.

After Zalesky had left, and just as Maddox and Young were leaving, Ronald Martin arrived at Young's home. Martin testified he did not make any telephone calls while he was there with defendant. The jury could find Martin was not an accomplice.

Hopp testified he received a telephone call before Maddox and Young arrived at his home but no one responded when he answered it. When Maddox and Young reached Hopp's home, Young knocked on the door. Hopp opened the door to let him in, and Maddox followed with the pistol drawn. Maddox told Hopp to stop talking to the police about drug traffic or he would come back from Chicago and kill him. A scuffle ensued in which Hopp was wounded. Young and Maddox fled back to Young's house. When they got there, Young told everyone to leave. Young found his telephone under the cushion of a chair with a sweater wrapped around the receiver which was off the hook.

Based on this evidence, the jury could find defendant made the telephone call to Hopp.

The testimony of Young, Martin, and Hopp tended to corroborate material parts of the testimony of Maddox concerning defendant's presence and participation in the planning and implementation of the attack on Hopp.

We hold the evidence satisfied the terms of § 782.5, The Code. Consequently we find no merit in defendant's appeal.

II. *The State's cross-appeal.* Defendant was originally charged with five crimes in separate counts in a single county attorney's information. Included were charges of malicious threats to extort in violation of § 720.1, The Code, and conspiracy to commit malicious threats to extort. These two charges were based on the threats which the State alleged Maddox made to Hopp to compel him to stop giving information to the police about Zalesky's drug trafficking.

Before entering a plea to the charges defendant filed a demurrer, asserting in part that the two counts based on § 720.1 were not supported by the allegations of the information because threats to compel a person to refrain from doing an act do not come within the proscription of the statute. Defendant relied on § 777.2(2), The Code, which authorizes a demurrer when the indictment or information "contains matter which, if true, would constitute a legal defense or bar to the prosecution." Judge Eads sustained the demurrer to these two counts on March 25, 1977.

The case proceeded to trial before Judge Vietor on the three remaining counts. Defendant was acquitted on two of them and convicted on the one involved in his appeal. He was sentenced on July 8, 1977. He served his notice of appeal from his conviction and sentence on the same date, and the State served notice of its cross-appeal on July 15, 1977.

Defendant contends the State's appeal is untimely and we agree. As a result, we do not reach the merits of the State's appeal.

To be timely an appeal in a criminal case must be taken within 60 days of final judgment. § 793.2, The Code. Final judgment on the count on which defendant was convicted was the sentence pronounced on July 8, 1977. The State's appeal was taken within 60 days of that date. How-

ever, the State's appeal is not from that judgment; it assails the order of March 25 sustaining the demurrer to two other counts. If the order sustaining the demurrer started the period for the State's appeal from that order, the State's appeal was too late because it was taken 112 days later.

An order sustaining a demurrer under § 777.2(2) is a final judgment. *State v. Talerico*, 227 Iowa 1315, 1319, 290 N.W. 660, 661 (1940) ("we conclude this terminated the case and constituted a final judgment from which an appeal could be taken by the State"). See *State v. Buckley*, 232 N.W.2d 266, 271 (Iowa 1975); *State v. Valeu*, 259 Iowa 963, 146 N.W.2d 228 (1966).

Under these authorities the March 25 order was a final judgment from which the State could appeal unless a different result is indicated because the order did not dispose of the other three counts in the information.

As in civil cases, the general rule in criminal cases is that a judgment is final for purposes of appeal when it terminates the litigation on the merits and leaves nothing to be done but to enforce by execution what has been determined. *State v. Klinger*, 259 Iowa 381, 144 N.W.2d 150 (1966). However, the rule that to be final the judgment must dispose of the entire case does not apply when distinct causes of action are united in the same suit. *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 596–597 (Iowa 1971).

The same exception applies in criminal cases. If an order decides an issue merely as a step toward final disposition of a prosecution, it is interlocutory; however, if it disposes of a separable branch of the case, it is an appealable final judgment. *Village of Niles v. Szczesny*, 13 Ill.2d 45, 147 N.E.2d 371 (1958); *Smith v. State*, 234 Ind. 691, 131 N.E.2d 148 (1956); 24 C.J.S. Criminal Law § 1644 at 994.

When separate charges are made in a single county attorney's information or indictment, an order disposing of one of them so effectively that no further prosecu-

tion can be maintained on that charge while the order stands is an appealable final judgment. *People v. Ring*, 26 Cal.App.2d 768, 70 P.2d 281, 282 (1937). Cf. 18 U.S.C. § 3731. The order sustaining the demurrer to two of the five counts in the present case meets this standard. The charges are separable because they charge separate offenses upon which separate judgments may be rendered. *State v. Criswell*, 242 N.W.2d 259, 260 (Iowa 1976). See § 773.39, The Code. They could have been brought in separate indictments or informations. *State v. Cook*, 261 Iowa 1341, 1348, 158 N.W.2d 26, 30 (1968).

Therefore we hold the time for the State's appeal from the order sustaining the demurrer started to run when the order was entered on March 25, 1977. Because the State's appeal was taken more than 60 days after that date, it is untimely and must be dismissed.

The case is thus affirmed on defendant's appeal, and the State's cross-appeal is dismissed.

AFFIRMED ON APPEAL; DISMISSED ON CROSS–APPEAL.