STATE of Missouri, Respondent,

v.

Ralph E. BUCK, Appellant.

No. WD 37850.

Missouri Court of Appeals,
Western District.

Dec. 16, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 3, 1987.

Application to Transfer Denied
March 17, 1987.

Kathleen Murphy Markie, Columbia, for
appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and DIXON and
NUGENT, JJ.

CLARK, Chief Judge.

Ralph Buck was charged with and convicted of first degree sexual assault and escape from confinement. His two points on appeal contend, as to both offenses, that the evidence was insufficient to support the verdicts and that acquittal should have been directed. The conviction of sexual assault is affirmed. The conviction of escape from confinement is reversed.

The events which gave rise to both charges lodged against appellant occurred in a continuous, interrelated sequence and are restated here without differentiation as to the separate crimes. The evidence is reviewed in the light most favorable to the state, all contrary evidence and inferences being disregarded. *State v. Smith*, 686 S.W.2d 43, 46 (Mo.App.1985).

The scene of the alleged crimes was the Boone County Jail where appellant was confined. On July 19, 1985, a female, F.C.D., was arrested for possession of marijuana and because of her bizarre behavior, she was placed in protective custody. She was combative, insisted on removing her clothes and rambled incoherently. Ultimately, F.C.D. was placed in a cell on the second floor of the jail where she continued to behave irrationally. At some time between July 19 and July 22, appellant and two other inmates of the jail were moved into a three-man cell which was adjacent to the cell occupied by F.C.D. Although the cells were separated by a masonry wall, appellant and his cellmates were able to observe F.C.D. through a hole in the wall and exchanged remarks with her about prospects for sexual encounters.

During the afternoon of July 22, the officers on duty at the jail heard banging noises coming from the second floor area, but because they were shorthanded, no one

went to investigate until early evening. When the guard went to the cell area about 7:00 p.m., he found that a hole had been battered in the wall between appellant's cell and that of F.C.D. and appellant was in the latter's cell engaged in sexual intercourse with F.C.D. According to one of appellant's cell-mates who testified for the state, appellant had used a metal reinforcing bar removed from one of the cell bunks to knock out enough of the wall to gain access to F.C.D.'s cell.

Appellant was returned to his cell and F.C.D. was taken to the University of Missouri Medical Center for examination. In route, F.C.D. continued to make inappropriate statements, talked incoherently, refused to put on clothing and was belligerent. At the hospital, a psychiatrist was called in for consultation and after observing F.C.D., he expressed the opinion that she was mentally incapable of giving a valid consent to a physical examination. From current observations and information in the hospital records pertaining to F.C.D.'s prior admissions, the doctor's opinion was that F.C.D. was suffering from schizophrenia, paranoid type. A second examination was performed and that physician's diagnosis of F.C.D.'s mental illness was the same.

As to the sexual offense, appellant contends the state did not prove F.C.D.'s mental state was such that she was unable to consent to intercourse. He also contends there was no proof he had knowledge of the victim's mental impairment. The second argument is relevant only if the victim was in fact incapable of consenting and if the issue of knowledge on the part of the accused has been injected into the case.

The offense of sexual assault in the first degree is defined by § 566.040, RSMo.1978:

"A person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old."

Under § 556.061(13), RSMo.Cum.Supp. 1984, incapacitated is defined as " * * * that physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of his conduct, or unable to communicate unwillingness to an act."

The issue of whether or not F.C.D. was incapacitated at the time of appellant's assault upon her [1] turns upon whether F.C.D. was sufficiently deranged so that she was unable to appraise the nature of her conduct. The evidence from lay witnesses was that during her confinement in the Boone County Jail, F.C.D. spoke irrationally about being able to see through crystals and clusters of pearls, of people killing her babies and of fluorescent lights burning her body. She insisted on removing her clothes and poured water on herself because her body was burning. There was no evidence of any lucid intervals from the date she was taken into custody until she was admitted to a mental health facility. The objective signs of F.C.D.'s mental condition were obvious and compelling.

The expert testimony, particularly from Dr. Sue King, resident physician in psychiatry at the Mid-Missouri Mental Health Center, expanded upon the condition of schizophrenia from which F.C.D. suffered. According to Dr. King, a schizophrenic has an impaired sense of reality, can't tell what is real and what is not, has a loss of knowledge as to boundaries between themselves and their environment and have disordered thoughts and perceptions. In the case of F.C.D., she was heard to identify herself as God, she heard voices that did not exist, saw things which were not there and experienced hallucinations about birds, purple rain and crystal tears. Three physicians gave their opinion that F.C.D. was so deranged mentally that she was incompetent even to consent to a review of her own medical records.

█ The evidence, if believed by a jury, was sufficient to permit a finding that at the time appellant broke through the wall

---

1. Appellant's evidence appeared to suggest F.C.D. was competent, resisted his advances but was overpowered physically.

into F.C.D.'s cell, she was unable to distinguish reality, did not have the mental capacity to appreciate the nature of her conduct and she was therefore incapacitated within the definition of § 566.040, RSMo. 1978.

The second part of appellant's argument on his first point asserts that even if F.C.D. was unable because of her mental condition to consent to intercourse, there was no evidence appellant was aware of the victim's disability. This argument discounts entirely the extreme irrational behavior of F.C.D. and the natural assumptions a lay observer would make from such conduct. It is, however, unnecessary to decide the issue on that ground because the question of appellant's knowledge was not in the case.

Section 566.020, RSMo.1978 provides that in cases where criminality of conduct depends on the victim being incapacitated, no crime is committed if the actor reasonably believed the victim was not incapacitated and reasonably believed the victim did consent. The defendant has the burden of injecting the issue of belief as to capacity and consent.

In this case, there was no evidence at all as to what appellant's belief may have been regarding F.C.D.'s capacity or her consent. The only testimony for the defense was by another cell occupant who was not asked and gave no testimony about appellant's perception of the victim or her conduct. The issue of appellant's belief was not injected into the case and the state therefore had no burden of proof on the question of whether appellant could have reasonably believed F.C.D. was not incapacitated and could and did consent to the act. Appellant's first point is denied.

The second point of alleged error concerns the charged offense of escape from confinement. Under the evidence recited earlier in this opinion, it is appellant's contention, simply put, that when he forcibly made his way from one locked cell in the Boone County Jail to another locked cell and did not gain access to a corridor, much less to freedom outside the jail, he did not escape. We agree.

The offense is defined by § 575.210, RSMo.1978 which says, in material part, "[a] person commits the crime of escape from confinement if, while being held in confinement after arrest for any crime, or while serving a sentence after conviction for any crime, he escapes from confinement." The essence of escape by an inmate in custody is that the custodial detention be breached and the inmate be at liberty, however briefly. One who is yet within the walls of the institution, particularly as here where appellant merely went from one cell to another, could scarcely be described as having gained any freedom. This is not to say that some unauthorized movement by an inmate within a jail or penitentiary might not be a prelude to escape and form the basis for a charge of attempted escape but such was not the circumstance here. Appellant's conduct could not be characterized as indicating any plan to escape and, of course, he was not charged with an attempt.

The state cites two cases which it says support the proposition that when a prisoner is given specified limits of confinement, as within a certain cell, and he moves outside that boundary, he has escaped. The cases are distinguishable because in each, the defendant actually gained his liberty. In *State v. Baker*, 355 Mo. 1048, 199 S.W.2d 393 (1947), the defendant was at the prison farm and failed to return to the dormitory for evening roll call. Fearing punishment for his late return, Baker left the farm and was recaptured the next day some distance north of the farm boundary. In *State v. Whitney*, 686 S.W.2d 535 (Mo. App.1985), the defendant was brought to court for a preliminary hearing and was instructed to remain on a bench. Instead, Whitney left the courthouse and was apprehended later some five blocks away.

The *Baker* and *Whitney* cases do not support the concept that escape from confinement occurs when a prisoner under confinement merely moves from one place to another within the place of confinement, nor does the language of the statute indicate the designation of an offense of sufficient breadth to include the facts in this

case. Appellant did not escape and the trial court erred in submitting that charge under the evidence adduced.

The judgment and sentence for sexual assault is affirmed. The conviction for escape from confinement is reversed.

All concur.