**STATE of Indiana, Appellant–Plaintiff,**

v.

**Misty MOORE, et al., Appellees–Defendants.**

No. 28A01–0903–CR–111.

Court of Appeals of Indiana.

Oct. 7, 2009.

Transfer Denied Dec. 17, 2009.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General of Indiana, Indianapolis, IN, Attorneys for Appellant.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, IN, Attorney for Appellees.

**OPINION**

BAKER, Chief Judge.

Appellant-defendant State of Indiana appeals the order entered by the trial court

1. Ind.Code § 35–44–3–5(a).

2. Because of the procedural posture of this case, there is no evidence from which to as-

dismissing the charge of Escape,[1] a class C felony, that the State had brought against appellees-defendants Misty Moore, et al. (collectively, the Inmates). Moore and five other inmates at the Greene County Jail had left their assigned cells during the night to spend time with each other in restricted areas. The State argues that the trial court erred by finding that the facts as alleged by the State did not constitute the crime of escape. Finding no error, we affirm.

*FACTS*

Beginning in September 2008, the three female Inmates allegedly removed ceiling tiles in their cells and climbed through the ceiling into the male cell block, usually after midnight.[2] Upon arriving in the male cell block, the Inmates would hang out, play cards, and have sex with each other. The three female Inmates went to the male cell block almost every night, and the three male Inmates went to the female block through the ceiling at least once.

On November 14, 2008, the State charged the Inmates with class C felony escape. The Inmates each filed respective motions to dismiss the charge beginning in December 2008. The trial court held a hearing on the first motion to dismiss and granted it on January 21, 2009. It granted all of the other Inmates' motions to dismiss in the subsequent weeks. The State now appeals.

*DISCUSSION AND DECISION*

When reviewing the grant of a motion to dismiss an information, we review the trial court's ruling for an abuse of discretion. *Zitlaw v. State,* 880 N.E.2d

sert "facts." Thus, the facts herein are based upon the allegations contained in the probable cause affidavits.

724, 728–29 (Ind.Ct.App.2008), *trans. denied*. To the extent that this case rests upon statutory interpretation, however, our review is de novo. *Ashley v. State*, 757 N.E.2d 1037, 1039 (Ind.Ct.App.2001). Penal statutes should be construed strictly against the State; thus, any ambiguities should be resolved in favor of the accused. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005). At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. *Id.* Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. *Id.* Statutes concerning the same subject matter must be read together to harmonize and give effect to each. *Id.*.

A person commits class C felony escape when she "intentionally flees from lawful detention...." I.C. § 35–44–3–5(a). "Lawful detention" is statutorily defined as:

(1) arrest;

(2) custody following surrender in lieu of arrest;

(3) detention in a penal facility;

(4) detention in a facility for custody of persons alleged or found to be delinquent children;

(5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;

(6) detention for extradition or deportation;

(7) placement in a community corrections program's residential facility;

(8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment,

court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

Ind.Code § 35–41–1–18.

■ For our purposes herein, the only applicable definition of "lawful detention" is "detention in a penal facility[.]" I.C. § 35–41–1–18(a)(3). Thus, to prove that the Inmates committed escape, the State was required to establish that they intentionally *fled from detention* in a penal facility. *Id.;* I.C. § 35–44–3–5(a).

■ The facts as alleged by the State establish that the Inmates snuck through the ceiling into restricted areas in the middle of the night. That is almost certainly a violation of Jail rules. These alleged facts do not, however, establish that the Inmates were fleeing from the Jail, attempting to flee from the Jail, or had any intention of attempting to flee from the Jail. The Sheriff's Department—or Department of Correction, for inmates housed in prisons—certainly has the authority to punish inmates for rule violations. For example, the Sheriff's Department here could have deprived the Inmates of good time credit. A rule violation does not necessarily establish that a crime was committed, however, and here, the State was unable to meet its burden.

The State directs our attention to a number of cases from other jurisdictions in support of its arguments. But most of those cases are distinguishable from the facts herein, inasmuch as the defendants in those were apprehended in the midst of an escape from the facilities in which they were confined. *State v. Sugden*, 143 Wis.2d 728, 422 N.W.2d 624 (1988) (inmates committed escape where they overpowered guards and made it past one fence before being subdued inside the second perimeter fence); *State v. Padilla*, 113

P.3d 1260 (Colo.Ct.App.2005) (inmate committed escape where he broke out of a locked building and was apprehended when he became entangled in the barbed wire fence at the facility's perimeter); *Crowder v. State,* 812 S.W.2d 63 (Tx.App.-Houston [14th Dist.] 1991) (inmate committed escape where he had stuffed his bed with books and clothing to make it appear occupied and was found hiding under some construction material in a restricted area and had in his possession a pair of shorts that had been dyed black); *see also Huffman v. State,* 659 N.E.2d 214, 215 (Ind.Ct.App.1996) (boy in the custody of the Boys' School committed escape where he broke out of his cottage and was found outside, later admitting that he had intended to leave the Boys' School property).

Cases from other jurisdictions that have fact patterns more analogous to the one herein have reached the same conclusion as the trial court did here—although rules may have been broken, no crime was committed. *See Louisiana v. Liggett,* 363 So.2d 1184 (La.1978) (inmate violated disciplinary rules but did not commit escape where he failed to report to work and was discovered reading a book in an area where he was not supposed to be); *State v. Davis,* 271 N.W.2d 693 (Iowa 1978) (inmate violated prison rules but did not commit escape where he put a dummy in his bed, left his cell at an unauthorized time, and was found drinking alcohol in the prison library); *State v. Buck,* 724 S.W.2d 574 (Mo.Ct.App.1986) (inmate committed sexual assault but not escape when he broke through the wall between his cell and another inmate's, raping the other inmate after arriving in her cell).

■ Under these circumstances, we can only conclude that where, as here, inmates have no intent or plan to flee from detention in the penal facility in which they are confined, they cannot be guilty of the crime of escape when they merely enter restricted areas of the facility without permission. They may be in violation of facility rules, and can be punished accordingly, but have not committed a crime. We acknowledge that the relevant statutes could be drafted more artfully and explicitly, but given the well-established rules that we construe penal statutes strictly against the State and that ambiguities should be resolved in favor of the accused, *Meredith v. State,* 906 N.E.2d 867, 872 (Ind.2009), close calls such as this one must be resolved in the defendants' favor. Therefore, we find that the trial court did not abuse its discretion by dismissing the charges herein.

The judgment of the trial court is affirmed.

RILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

Upon my view that Ind.Code Ann. § 35-44-3-5 (West, PREMISE through 2009 Public Laws approved and effective though 4/20/2009) applies where incarcerated persons escape from a cell in a penal facility, but did not intend to leave the boundaries of the penal facility, I respectfully dissent from the decision to affirm the dismissal of escape charges against the Inmates.

Although technically framed in terms of intent, the question presented in this case essentially is whether one can commit the offense of escape, as defined in I.C. § 35-44-3-5, when one breaks out of a cell in a penal facility but does not leave the facility itself or intend to do so. Subsection (a) of I.C. § 35-44-3-5 provides that a person commits the offense of escape if he "intentionally flees from lawful detention". The question presented requires that we discern the meaning of this phrase in the

instant factual context. The Inmates contend, and the Majority holds as a matter of first impression, that when a prisoner is in an area of special detention inside a correctional facility, leaving or intending to leave the facility is an element of this offense. I reach the opposite conclusion. I believe the Inmates committed escape, i.e., intentionally fled from lawful detention, when they broke out of their cells to go to a different part of the facility, and that the intent to leave the facility's outer boundaries is not an element of the offense as defined in I.C. § 35–44–3–5.

When interpreting a statute, we must first determine whether the legislature has spoken clearly and unambiguously on the matter in question. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941 (Ind.2001). That begins with an examination of the language employed in the statute. *Sales v. State,* 723 N.E.2d 416 (Ind.2000). " 'When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense.' " *Gauvin v. State,* 883 N.E.2d 99, 103 (Ind.2008) (quoting *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind.1999)). Courts presume the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.* If a statute is found to be ambiguous, then we must apply well-established rules of construction to resolve the ambiguity. *Id.* A statute is ambiguous when " 'it is susceptible to more than one interpretation.' " *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d at 947 (quoting *In re Lehman,* 690 N.E.2d 696, 702 (Ind.1997)). When an ambiguity compels application of the rules of statutory construction, our goal is to determine, give effect to, and implement the intent of the legislature. *N.D.F. v. State,* 775 N.E.2d 1085 (Ind.2002). The language of the statute itself is the best evidence of legislative intent. *Prewitt v. State,* 878 N.E.2d 184 (Ind.2007). Thus, we strive to give the words in a statute their plain and ordinary meaning. *Id.* We examine the statute as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Id.* Moreover, we presume that "the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* at 186.

In my view, the parties' divergent views as to the meaning of "intentionally flees from lawful detention" in I.C. § 35–44–3–5 are, at a minimum, plausible. Thus, the statute is ambiguous and its meaning must be construed. *Gauvin v. State,* 883 N.E.2d 99. The statutory language at the center of this case is "intentionally flees from lawful detention." "Intentionally" is not a controversial term here. This leaves the phrase, "escapes from lawful detention." The phrase "lawful detention" is defined by statute, specifically Ind.Code Ann. § 35–41–1–18 (West, PREMISE through 2009 Public Laws approved and effective though 4/20/2009), which sets out a various examples of lawful detention, including:

(1) arrest;

(2) custody following surrender in lieu of arrest;

(3) detention in a penal facility;

(4) detention in a facility for custody of persons alleged or found to be delinquent children;

(5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;

(6) detention for extradition or deportation;

(7) placement in a community corrections program's residential facility;

(8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

A fair summary of the foregoing is that "lawful detention" means some form of custody or arrest. The remaining term in the critical phrase under consideration, "flees", is not defined by statute. The verb "flee" when used transitively means "to run away from." Merriam Webster's Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/flee[1] (last visited on September 29, 2009). Therefore, focusing merely on the meanings of the words in this statutory phrase, it appears that "flees from lawful detention" means to run away from some form of custody or arrest. For our purposes here, this does not support one interpretation more than the other.

Finding little guidance from the statute's terminology, I turn to the analyses of other jurisdictions that have addressed a similar question. In so doing, I note that the Majority mentions several of the following cases as well, but summarily rejects them as inapposite. As the following will make clear, I draw different conclusions than do my colleagues as to those cases. The first such case is *Crowder v. State*, 812 S.W.2d 63 (Tex.App.-Houston [14th Dist.] 1991). The statute under consideration in *Crowder* defined escape as "unauthorized departure from custody". Tex. Penal Code Ann. § 38.01(3) (Vernon 1989). The offense was a felony if the accused was "confined in a penal institution." Tex. Pe-

nal Code Ann. § 38.07(c)(2). The relevant facts were that the defendant was discovered missing from his cell at the prison facility in which he was incarcerated when an evening count of the inmates was taken. His bed had been stuffed with books and clothing to make it appear that it was occupied. Officials quickly determined he was not in any "assigned area" and initiated a search. *Crowder v. State*, 812 S.W.2d at 69. The defendant was found hiding in a crawl space inside the prison walls. It appears there was no dispute that the defendant's ultimate plan was to escape from the prison altogether. The defendant claimed that the evidence was not sufficient to support his conviction for escape because he had not breached the outer walls of the prison at the time he was apprehended. Noting that the defendant was found in a restricted area forbidden to inmates and that a prison official testified that an inmate is not in custody if he was in a restricted area, the court concluded:

> Once he departed from his assigned area and entered a restricted portion of the prison facility, appellant was no longer in the custody of the prison officials. The fact that the appellant did not breach the prison's outer boundary has no bearing on this issue. Viewing the evidence in a light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that appellant made an unauthorized departure from custody.

*Id.*

The Majority rejects this case because, unlike the instant case, the defendant's ultimate intention was to break out of the prison altogether. Although that intention was indeed present in *Crowder* and missing here, the foregoing language indicates to me that the Texas court would have deemed Crowder's act a violation of the

Texas escape statute even without the intent to escape the prison's outer boundaries. It was enough that Crowder departed his assigned area and entered a restricted portion of the prison facility because, according to the *Crowder* court, at that point Crowder "was no longer in the custody of the prison officials[.]" *Id.*

The second case summarily dismissed by the Majority is *State v. Sugden,* 143 Wis.2d 728, 422 N.W.2d 624 (1988). In this case, the defendant was among several inmates at a penal facility who escaped from a security detention facility known as Wisconsin Cottage, which was located within the prison walls. The men overpowered guards, commandeered a vehicle, and smashed through an inner gate, but were stopped before they reached the outer perimeter of the prison sally port. The defendant was charged with escape, among other things. As was the case with the defendant in *Crowder,* there was no serious dispute that Sugden intended to leave the facility—he did. At trial, Sugden argued that because he had not exited the outer walls of the prison, he was still in custody. He argued that, at most, he was guilty of attempted escape. The Wisconsin Court of Appeals agreed and reversed his conviction for escape on grounds that "as a matter of law, escape could be a completed crime only if the inmate left the outer boundary of an institution." *Id.* at 734, 422 N.W.2d 624. The Wisconsin Supreme Court reversed the court of appeals, noting that the applicable statute in that case defined the relevant offense as "escape from custody", not escape from an institution. *See* Wis. Stat. § 946.42(3)(a) (West 1984).

The Wisconsin Supreme Court's formulation of the issue before it is strikingly similar to the issue before us in the instant case, i.e., "The issue presented here is whether the word, 'custody,' as used in the escape statute pertains only to the general geographical boundary of a particular state penal institution or pertains also to secure custodial facilities that are located within such an institution and to which prisoners may be confined." *State v. Sugden,* at 729, 422 N.W.2d 624. The Wisconsin Supreme Court began its analysis by noting that the court of appeals had misstated the crime charged: consistent with the statutory definition of the offense, the defendant was charged with escape from *custody,* not escape from an institution. Noting that the relevant statute provided examples of "custody of an institution" making it clear that areas of further restriction, i.e., special custody, may exist within a prison, the court determined that escape in that context was not limited to leaving the outer perimeter of the institution:

> Thus, "custody" per se of an institution is not directly related to its geographical outer boundaries. There may be custody without the walls and custody of various kinds, without limitation, within the walls. Hence, from the face of the statute as juxtaposed against the facts here, it is apparent that the locked cottage where Sugden was held constituted "custody of the institution." When he intentionally left that custody without lawful authority, his crime of escape was complete.

*Id.* at 737, 422 N.W.2d 624.

The third case rejected by the Majority is *State v. Padilla,* 113 P.3d 1260 (Colo.Ct. App.2005). Like *Crowder* and *Sugden, Padilla* interpreted "escape" to mean escaping from an area of confinement within a correctional facility without having left the facility's outer perimeter. In *Padilla,* the defendant got out of a locked building through a hole cut in a screen over the exercise yard. While attempting to leave the facility grounds, he was apprehended when he became entangled at the top of

the innermost of two barbed wire fences surrounding the facility. He was convicted of escape and appealed, arguing that to escape from custody or confinement after being placed in a detention facility, he must have succeeded in getting completely free from the facility. He further argued that, at most, he was guilty of attempted escape. The Colorado court rejected that argument, explaining:

He was confined inside a locked building within the detention facility. He was restrained and imprisoned by the building and the locked doors. *When he broke out of the building without authority, he had escaped from the controls placed on him even though he failed to get completely free from the facility.*

This was not a situation where an unrestrained prisoner merely moved from one area of the facility to another without permission. Here, defendant was locked in a building and could not leave it without breaching the walls and screens that confined him. In our view, *the act of physically removing restraints to free himself from the controls imposed on him constituted an escape from custody or confinement even though other controls, the perimeter fence, contained him within the facility.*

*Id.* at 1262 (emphasis supplied). The Majority rejects *Padilla* as instructive in the instant case merely because Padilla ultimately intended to escape the confines of the prison's outer boundaries. The highlighted language indicates to me, however, that in the court's view Padilla had committed the offense of escape when he breached the walls of the building in which he was confined within the prison.

In summary, the Majority rejects *Crowder*, *Sugden*, and *Padilla* on grounds that the defendants in those cases intended to escape from the prison altogether. My reading of those cases convinces me that such intent was not determinative in any of those analyses. To the contrary, the language utilized in each case reflects that it was the intent to break out of the area of special confinement within the facility that constituted the requisite intent, and the act of breaching that special confinement that constituted a completed act of escape.

The Majority concludes that the instant case should be decided on the rationale espoused in what it described as "[c]ases from other jurisdictions that have fact patterns more analogous to the one herein [and] have reached the same conclusion as the trial court did here[.]" Op. at 307. To be sure, those cases merit examination. In *State v. Buck*, 724 S.W.2d 574 (Mo.Ct. App.1986), the defendant broke through the wall of his cell into an adjoining cell, where he sexually assaulted a female prisoner. He was convicted of rape and escape. The defendant challenged the escape conviction contending that when he forcibly left his locked cell and entered another locked cell, because he "did not gain access to a corridor, much less to freedom outside the jail, he did not escape." *Id.* at 576. The Missouri escape statute provided, "[a] person commits the crime of escape from confinement if, while being held in confinement after arrest for any crime, or while serving a sentence after conviction for any crime, he escapes from confinement." Mo.Rev.Stat. § 575.210 (1978). The appellate court agreed with the defendant, stating,

The essence of escape by an inmate in custody is that the custodial detention be breached and the inmate be at liberty, however briefly. One who is yet within the walls of the institution, particularly as here where appellant merely went from one cell to another, could

scarcely be described as having gained any freedom.

*State v. Buck,* 724 S.W.2d at 576.

In *Louisiana v. Liggett,* 363 So.2d 1184 (La.1978), the defendant was incarcerated in the state penitentiary. A search ensued one day when he did not report to his assigned work detail. He was ultimately found hiding in a piece of large machinery, lying down, with his head on a pillow, and reading a book. He was convicted of escape and appealed, arguing that he was not in the custody of an officer at the time the alleged escape occurred, or in the alternative that there was no showing that he escaped from such custody. The relevant statute defined the offense of "escape" as, "(t)he intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, detained, or otherwise in the lawful custody of any law enforcement officer or officer of the Department of Corrections from any place where such person is legally confined[.]" La.Rev.Stat. § 14:110A(1) (1978). The Louisiana court reversed the conviction, stating,

> The evidence adduced at trial establishes only that defendant did not report to work by 8:00 a.m. on April 6, 1977, and was found hiding later that same day in the prison cannery reading a novel. Such evidence might well constitute a violation of prison disciplinary rules which may be punished by sanctions imposed by the appropriate prison administration board. However, we find no evidence in the record of circumstances which indicate that defendant, in the ordinary course of human experience, adverted to the prescribed criminal consequences as reasonably certain to result from his act. In other words, there was no evidence of facts or circumstances from which general criminal intent, an essential element of the crime of simple escape, can be inferred.

*Louisiana v. Liggett,* 363 So.2d at 1186 (footnote omitted).

Finally, *State v. Davis,* 271 N.W.2d 693 (Iowa 1978) involved a prisoner who did not return to his cell at lock-down. Instead, having earlier left a dummy in his bed, he proceeded to the prison library after it had closed and drank alcohol. The relevant Iowa statute defined escape as follows:

> If any person committed to the penitentiary ... shall escape from or leave without due authority any building, ... or any place whatsoever in which he is placed or to which he is directed to go or in which he is allowed to be ... whether inside or outside of the prison walls, he shall be deemed guilty of an escape from said penitentiary[.]

Iowa Code § 745.1 (1978). The Iowa court determined that although the "question [was] close", *State v. Davis,* 271 N.W.2d at 695, the conviction must be reversed because "when strictly construed as required, [Iowa Code § 745.1] cannot be stretched to cover defendant's activity in this case. There is nothing in the statute which would put defendant on notice an unauthorized failure to Return [sic] would be encompassed within the 'Escape from or Leave without due authority' language[.]" *Id.* at 696.

In considering the foregoing authority, I note what I deem to be a significant difference between the facts in the instant case and those in *Liggett* and *Davis.* In neither of those cases did the defendant force his way out of an area of confinement in order to enter the forbidden area in which he was ultimately found. In the former, the defendant simply did not return to his cell, but instead entered the library after it had closed. In the latter, the defendant did not report to work, but instead secret-

ed himself in another portion of the prison, where he made himself comfortable and read a book. In neither instance can the defendant be said to have escaped confinement to enter the forbidden area. Rather, in each, he abused his privilege of freedom of movement within the facility and entered a forbidden area. Therefore, those cases, while superficially similar in many ways, are significantly different in the most important respect, i.e., the defendant cannot be said to have *escaped from* an area of special confinement within the prison. In that regard, I fully agree that without having left an area of special confinement, a prisoner's act of entering a forbidden area in the facility cannot under any theory be regarded as an escape.

This leaves *Buck* as the only case holding that forcing one's way out of an area of special confinement within a penal institution, without exiting the institution altogether, does not constitute the crime of escape. Unfortunately, the Missouri court did not explain in detail why it concluded that breaking out of a locked cell did not constitute escape. Even so, I note the court did acknowledge that a breach of the outer walls of a detainment facility might not be necessary for a charge of *attempted* escape. *See State v. Buck,* 724 S.W.2d at 576 ("[t]his is not to say that some unauthorized movement by an inmate within a jail or penitentiary might not be a prelude to escape and form the basis for a charge of attempted escape"). In the final analysis, it seems to me that the *Buck* court's rationale, or at least its explanation, comes close to begging the question for our purposes here by noting that the defendant's "conduct could not be characterized as indicating any plan to escape[.]" *Id.* Ultimately, *Buck* is not persuasive on the issue we are called upon to decide in the instant case.

I believe the better view is espoused and reflected in *Sugden, Crowder,* and *Padilla.* Indiana's escape statute speaks in terms of fleeing from lawful detention. "Detention" in this context means "the act or fact of detaining or holding back, *especially* a holding in custody." Merriam Webster's Online Dictionary, *available at* http://www. merriam-webster.com/dictionary/detention [1] (last visited on September 29, 2009) (emphasis in original). This language is substantially similar to *Crowder's* "departure from custody", Tex. Penal Code Ann. § 38.01(3), *Sugden's* "escape from custody", Wis. Stat. § 946.42(3)(a), and *Padilla's* "escapes from ... custody or confinement", Colo.Rev.Stat. § 18–8–208 (2004). Drawing from these cases, it cannot seriously be argued that it does not promote public safety or facilitate efficient institutional administration to read "flees from lawful detention" so narrowly as to exclude the act of breaking out of an area of confinement within the walls of a detention facility, for whatever purpose and with the intent to go anywhere else, whether within or without the outer boundaries of that facility. Moreover, it cannot be merely a matter of prison discipline as the Majority indicates. As the *Sugden* court noted,

> [i]f it is appropriate in terms of correctional or penal policy to segregate some persons in locked detention facilities, it is that custody that is sought to be maintained, and it is the escape from that facility or custody that should be punished as escape. If the escape statute is interpreted to mean that the act is not complete unless the inmate goes over the outer walls, the deterrent from breaking out of secure special custody is minimized.

*State v. Sugden,* at 738, 422 N.W.2d 624. It seems to me that the Majority's decision casts the question regarding the meaning of I.C. § 35–44–3–5 as a choice between two mutually exclusive options: escaping

from an area of special confinement within a detention facility is either (a) the crime of escape or (b) a matter of prison discipline. Obviously, the Majority concludes it is the latter, ergo, not the former. In point of fact, I agree that it *is* a matter of prison discipline. Unlike my colleagues, however, I also believe that their act of breaking out of their cells *also* constituted the criminal offense of escape as defined in I.C. § 35–44–3–5.

Our Supreme Court has indicated that when a person is confined to a given prison or detention facility, that person is confined for restraint on his or her freedom by authorities of that institution. *See State v. Rardon*, 221 Ind. 154, 46 N.E.2d 605 (1943). May those authorities restrain a prisoner's freedom of movement further than just the outer boundaries of the facility? Of course, the answer is yes. Considering the generic nature of the language in Indiana's escape statute, I am hard-pressed to construe I.C. § 35–44–3–5 such that the confinement inherent in a prisoner's detainment in a secured area inside a correctional facility somehow differs from the confinement imposed by the outer walls of the facility. They are separate and distinct from one another in terms of physical scope, but each constitutes lawful detainment just the same. I believe that to hold otherwise would indicate that Indiana's criminal code does not apply within the walls of detention facilities because it does not recognize the facility's authority to restrain a prisoner's movement within the prison walls, or at least it places disobedience with respect to those restrictions beyond the reach of Indiana's criminal code. Indeed, this seems to me to be the unarticulated underpinning of the Majority's either-or approach to the instant question. Of course, Indiana's criminal code clearly reaches inside the walls of Indiana's criminal detention facilities. *See, e.g., Seketa v. State*, 817 N.E.2d 690 (Ind.

Ct.App.2004) (defendant convicted of aggravated assault for attacking a fellow inmate). If a prisoner assaults another inmate while in prison, this would clearly constitute a violation of prison rules and subject the perpetrator to disciplinary rules therefrom. It cannot seriously be argued that such would not *also* constitute a violation of Indiana's criminal code and subject the perpetrator to criminal penalties. I believe the same is true here, i.e., that fleeing an area in which one is lawfully detained or *confined* inside a detention facility not only is a violation of facility rules, but also constitutes the crime of escape as defined in I.C. § 35–44–3–5.

I note that this interpretation is in accord with the legislative history of this statute. At one time in Indiana, the offense of escape was defined in terms of escaping the boundaries of particular facilities. In the former version of the Indiana Code, the offense of escape was defined in its various forms in chapter 18 of Title 10. Ind.Code § 10–1807 (Burns 1956) defined escape from prison as occurring when a person, "confined in any prison of this state escapes therefrom[.]" I.C. § 10–1808 (Burns 1956) defined escape from the Indiana State Farm as occurring when a person, "sentenced to the Indiana State Farm, ... shall escape therefrom[.]" I.C. § 10–1809 (Burns 1956) defined jail breaking as occurring when a person, "being lawfully confined in any county jail or any other prison of this state awaiting trial upon any criminal prosecution ... shall escape therefrom[.]" Of somewhat less significance for purposes of the instant case, I.C. § 10–1815 (Burns 1956) provided that a person who escaped while being transported outside a prison but under the prison's auspices was deemed to have escaped from that prison. In 1957, the legislature added the offense of attempted escape, defined as the act of attempting to

escape, by a "person, lawfully confined in any penal institution, prison or jail of the state of Indiana". I.C. § 10–1816 (Burns Code 1957 Supp.).[3]

Following the recodification of the Indiana Code, all of the aforementioned escape statutes were subsumed into the current I.C. § 35–44–3–5, which, again, speaks only in terms of fleeing from lawful detention. The evolution of the offense of escape reflects that our legislature's concept of escape has evolved away from merely leaving the geographical boundaries of a prison or other correctional detention facility. With the advent of I.C. § 35–44–3–5, it now focuses on leaving an area of constraint, as designated by proper authorities. The legislature has clearly demonstrated its capability to define escape in terms of breaching the outer boundaries of a detention facility, yet chose not to do so in defining what is now the comparatively general offense of escape. *See also* Ind.Code Ann. § 11–8–4–14 (West, PREMISE through 2009 Public Laws approved and effective though 4/20/2009) ("[a]n inmate who escapes from an institution in which he is confined pursuant to [the Interstate Corrections] [C]ompact shall be deemed a fugitive from the sending state and from the state in which the institution is situated").

In other words, lawful detention may exist *within* the boundaries of an institution, and such detention is separate and distinct from the detention inherent in being confined to the facility itself. Thus, "lawful detention" with respect to a jail or penal facility is not strictly defined by and coterminous with a correctional facility's geographical outer boundaries. There may be detention of various kinds within the walls, including of course a jail cell. Ergo, the intent to breach the perimeter of

a facility is not necessarily an element of escape when the charged act involves escaping an area of detainment or confinement within the facility. Therefore, I believe that when the Inmates were locked in their cells in the Greene County Jail, they were lawfully detained therein, and if they broke out of the cell through the ceiling as alleged, they committed the offense of escape within the meaning of I.C. § 35–44–3–5. I would reverse the trial court and reinstate the charges.

---

**3.** Interestingly, the failure of the escape was an element of the latter offense. *See Fisher v.* *State,* 156 Ind.App. 18, 294 N.E.2d 632 (1973).