ATTORNEY FOR APPELLANT
Kevin R. O'Reilly
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Stephen R. Creason
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Apr 01 2008, 11:21 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 79S00-0702-CR-65

MICHELLE GAUVIN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Tippecanoe Superior Court No. 2, No. 79D02-0503-MR-1
The Honorable Thomas H. Busch, Judge

On Direct Appeal

**April 1, 2008**

**Shepard, Chief Justice.**

Appellant Michelle Gauvin pled guilty to the confinement, neglect, and murder of her four-year-old stepdaughter. The trial court imposed life without parole.

Gauvin's sentence rests in part on a finding that she tortured the child. Gauvin contends she was correcting the child's misbehavior. Parental supervision is crucial to rearing children,

but the duration and severity of the pain and suffering Michelle's stepdaughter endured adequately established torture as an aggravating circumstance.

Gauvin also claims that her sentence is inappropriate. We affirm.

**Facts and Procedural History**

Aiyana Gauvin was born on December 12, 2000, to Christian and Cassandra Gauvin. Christian obtained custody of Aiyana on December 19, 2003, following a Child in Need of Services proceeding. Christian and Aiyana subsequently moved in with Michelle, who married Christian on February 18, 2005. Michelle usually cared for Aiyana during the day; Christian cared for her in the evenings.

According to the Gauvins, Aiyana began exhibiting intermittent behavioral problems in summer 2004. They claimed that Aiyana sometimes acted defiantly or disrespectfully, would not stop picking scabs on her feet or pulling out her own hair, urinated and soiled herself or her bed, fell over and injured herself, and refused to eat or ate condiments out of the refrigerator during the night.

In response to Aiyana's behavior, the Gauvins resorted to a number of disciplinary measures. Michelle often tied up Aiyana and put duct tape over her mouth. At times, Aiyana was bound to a play gate, or to a booster seat using "zip-type child cabinet safety locks." (State's Ex. 13, 15, 60, 85.) Michelle frequently struck Aiyana with her hand or with pieces of a wooden cutting board. (Appellant's App. at 42-43.) Michelle once bit Aiyana after the child had bitten her. (Id. at 43.) Sometimes Michelle would leave Aiyana in Christian's care when Michelle knew that Christian was "fed up with her" and likely to physically abuse the child. (Id. at 42.)

Aiyana slept in a small room adjacent to the garage with a plywood floor but no insulation or forced air heating. The room was "exceptionally cold," about ten to fifteen degrees colder than the rest of the house. (Tr. at 40, 83, 175.) To prevent Aiyana from leaving the room

2

during the night, the door was sometimes tied shut and anchored to a chair in the next room. Aiyana's room contained a bed without bedding, and she was prevented at times from sleeping even on that. Instead, she was forced to sleep bound either in her booster seat or on a small plastic tray in the corner on the floor.

The Gauvins also photographed Aiyana in varying states of bondage and forced her to view these pictures of herself. (Id. at 180-81; State's Ex. 80, 113-22.) In one of the photographs, Aiyana is tied to her bed, wearing an overflowing diaper and lying in excrement. Another shows Aiyana bound to a play gate and staring at seven of these photographs. A digital camera found in the house contained a memory card with two photographs still saved on it.

On March 15, 2005, Michelle again tied Aiyana in the booster seat, with her hands restrained behind her. Christian was particularly "fed up" with Aiyana that night, and while Michelle was out of the house, he beat her severely. (Appellant's App. at 43-44.) When Michelle returned, Aiyana was still bound to the chair. Michelle attempted to feed her a blended rice concoction, but Aiyana had difficulty eating and vomited. In response, Michelle covered Aiyana's mouth with duct tape and put her in her room to go to sleep, still strapped to the booster seat. Michelle admitted knowing that Aiyana "probably needed medical attention." (Id. at 45.) Nonetheless, she left Aiyana in this condition all night.

The following morning, police and firefighters were called to the Gauvin home on a report that a four-year-old child was choking. On entering the home, emergency personnel found Aiyana not breathing, without a pulse, and cold to the touch. She had red marks and bruising on her face, arms, chest, and legs. Michelle explained to police that she had found Aiyana unresponsive on the floor of the child's room. When the coroner arrived, she observed that Aiyana was "obviously deceased." (Tr. at 79.)

An autopsy revealed that Aiyana died from acute subdural hemotoma caused by vigorous shaking or a blunt force injury to the head within twenty-four hours of her discovery. Numerous bruises, abrasions, and scratches covered Aiyana's body, varying in age from less than one day old to several days old. The pathologist estimated that Aiyana had been struck at least four or

five times on her head and more than two dozen times on the rest of her body. Ligature marks were found on her wrists. She was malnourished and dehydrated.

In June 2005, as Michelle awaited trial for Aiyana's death, corrections officer Tammy Lynch of the Tippecanoe County Jail went to Michelle's cell to investigate a report that Michelle had attempted suicide. During their conversation, Michelle said she was "tired of all the shit and wanted to tell the truth." She then stated, "I killed the little bitch. The little bitch pissed me off and I killed her." Lynch asked Michelle "if she was [saying] she had killed that baby girl." Michelle responded, "Yes I killed the little bitch and she deserved it too." (State's Ex. 112.)

On September 15, 2006, Michelle pled guilty to murder, confinement as a class B felony, and neglect of a dependent as a class B felony. The trial court found two aggravating circumstances: (1) Aiyana was less than twelve years of age; and (2) Michelle tortured Aiyana while Aiyana was alive. The court found three mitigating circumstances: (1) Michelle had no substantial prior criminal history; (2) Michelle suffered from severe borderline personality disorder as a result of her tragic childhood; and (3) Michelle had raised two exemplary children. Concluding that the aggravating factors carried greater weight, the trial court sentenced Michelle to life imprisonment without parole for murder and to two twenty-year terms for confinement and neglect, all served consecutively.

Michelle has appealed, challenging the trial court's finding of torture as an aggravator and its rejection of extreme emotional disturbance as a mitigator. Michelle also argues that her sentence is inappropriate. Pursuant to Indiana Rule of Appellate Procedure 4(A)(1)(a), this Court has mandatory and exclusive jurisdiction over the appeal.

**Standard of Review**

We review trial court findings of circumstances relevant to sentencing for abuse of discretion. Smallwood v. State, 773 N.E.2d 259 (Ind. 2002). We exercise our authority "to review and revise the sentence imposed," Ind. Const. art. VII, § 4, in accordance with Appellate

4

Rule 7 (revision permitted if "the sentence is inappropriate in light of the nature of the offense and the character of the offender").

## I. Torture Aggravator

Michelle challenges the trial court's finding of torture as an aggravating circumstance arguing that the General Assembly did not intend for the aggravator to apply to parents attempting to correct their child's behavior, even if the disciplinary measures are extreme.

This is a question of statutory interpretation. "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind. 1999). Courts presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policies and goals. B.K.C. v. State, 781 N.E.2d 1157 (Ind. Ct. App. 2003).

Indiana Code § 35-50-2-9(b)(11) provides an aggravating circumstance to murder if "[t]he defendant burned, mutilated, or tortured the victim while the victim was alive." Clearly, the statutory language makes no exception based on the relationship between the offender and victim. Any person who tortures and subsequently murders another person appears to qualify for the aggravator.

Michelle cites no authority for her contention that the legislature did not intend for the torture aggravator to apply to parents disciplining children. Instead she argues for a policy that distinguishes torture committed by one with a "sinister motive" from that committed by one with the purportedly "benign motive" of discipline, with only the former qualifying for the torture aggravator. (Appellant's Br. at 7-8.) This is a dichotomy we are unwilling to endorse.

While Michelle is correct that "[p]arents are expected to curb their children's free will to keep them safe and to help them learn how to function in society," that end does not justify all

means.  (Id. at 7.)  Under Michelle's interpretation, no act committed by her against her child would justify the torture aggravator, regardless of how abusive the act may be.  This interpretation runs contrary to a statutory scheme that seeks to prevent any person from being burned, mutilated, or tortured before being murdered.  Moreover, the Indiana Code proscribes child abuse in many forms.  We think it unlikely that the legislature decided to punish parents who commit child abuse but pass on those who commit child torture/murder.  And no statutory basis exists for applying the torture aggravator to only those individuals with an especially evil motive.

Accordingly, parental acts of torture, even for disciplinary or corrective purposes, are not exempt from consideration as aggravating circumstances.  If the law is to be otherwise, the legislature is best suited to making it so.

We now turn to whether Michelle's actions constituted torture.  In Nicholson v. State, we explained that the torture aggravator requires: "[A]n appreciable period of pain or punishment intentionally inflicted and designed either to coerce the victim or for the torturer's sadistic indulgence.  Put another way, torture is the gratuitous infliction of substantial pain or suffering in excess of that associated with the commission of the charged crime."  768 N.E.2d 443, 447 (Ind. 2002).  This is necessarily a fact-specific inquiry.

Christian admitted that he and Michelle had both been physically punishing Aiyana off and on for several months before her death.  The autopsy revealed that Aiyana's final weeks of life were especially brutal, her body covered with evidence of severe blows, none of which appeared in family photographs taken just a few weeks before.  Michelle bound Aiyana or tied her to a booster seat or play gate to restrict her movements and punish her, often leaving her bound during the night.  When Aiyana spoke rudely to Michelle or Christian, her mouth was taped shut.  When Aiyana would not eat, Michelle force-fed her an unpalatable blend of foods, causing Aiyana to vomit.  When Aiyana urinated and defecated in her bed, she was restrained to the bed and forced to lie in her own waste.

6

In addition to physical punishment, the Gauvins subjected Aiyana to emotional and psychological trauma. Aiyana was made to sleep in an uninsulated room built off of the garage, in isolation from the rest of the family. Perhaps most disturbing of all, Michelle and Christian photographed Aiyana in different states of bondage and forced her to view these images.

While there may be a scenario that walks the line between parental abuse and outright torture, this is not such a case. Michelle submitted Aiyana to abuse so far in excess of its claimed purpose that her actions surely constituted torture. The trial court did not abuse its discretion in finding torture as an aggravating circumstance.

## II. Emotional Disturbance as a Mitigator

Michelle contends that the trial court improperly rejected the statutory mitigating circumstance that she was experiencing an extreme emotional disturbance at the time of Aiyana's murder. See Ind. Code Ann. § 35-50-2-9(c)(2) (West 2007). Both parties' expert witnesses concluded that Michelle's severe borderline personality disorder "should be considered to be a severe emotional disturbance at the time of the [murder]." (Tr. at 841.) The State argues that while the trial court did not find that Michelle's mental illness was a mitigator, it nonetheless fully considered Michelle's personality disorder in fashioning a sentence.

In its sentencing order, the trial court carefully explained why, despite the experts' contrary testimony, it rejected the extreme emotional disturbance mitigator:

> A campaign of torture had been deliberately imposed as the regular form of discipline over a long period of time. Michelle was undoubtedly passionate at intervals, but she had numerous opportunities for reflection. The final blow may have been struck in anger, but the campaign of torture was intentional. . . . The court finds that [Michelle] suffers from severe Borderline Personality Disorder, as a result of her tragic childhood. Both psychiatrists agreed on this diagnosis. Furthermore, both agreed that there is a recognized treatment for the disorder that may increase the coping ability of one who suffers from it. . . . [Michelle] had numerous opportunities to stop and seek help. Her severe Borderline Personality Disorder has been with her since her childhood. There is no evidence that she has ever acknowledged that she has a problem or sought treatment, despite her employment problems, failed relationships, and inability to get along with other

people. Because she has never acknowledged her problems in the past, there is no reason to hope that she will persevere with treatment or that treatment will be successful in the future.

(Appellant's App. at 72-74.)

Despite the trial court's indication that it rejected Michelle's extreme emotional disturbance at the time of the murder, the order demonstrates that it gave her emotional problems due consideration as a separate mitigating circumstance, just as if the statutory mitigator had indeed been applied. The court simply concluded that the aggravating circumstances outweighed Michelle's emotional problems and the other mitigators. We find no abuse of discretion in this design.

### III. Appropriateness of the Sentence

Finally, Michelle asks that we review and revise her sentence in accordance with Article VII, § 4 of the Indiana Constitution. We enter such revisions only when we find a sentence inappropriate "in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Michelle claims that her sentence of life without parole is inappropriate and seeks revision to a term of years.

Michelle's offenses were heinous and cruel. Not surprisingly, she does not discuss the nature of the offenses at all in her brief, except to describe them as "terrible crimes." (Appellant's Br. at 14.)

Concerning her character, Michelle presents largely the same assertions that she presented to the trial court in mitigation: her troubled childhood, social and emotional issues, and otherwise exemplary parenting record. Although she suffers from severe borderline personality disorder, Michelle admitted knowing that Aiyana needed medical attention on the night of her death, yet she did nothing. This fact, coupled with the special depravity with which Aiyana was treated during her last months alive, paints Michelle's character in a poor light.

8

Nothing in Michelle's presentation, able as it has been, persuades us that a revision of her sentence is appropriate.

## Conclusion

We affirm the judgment of the trial court.


Dickson, Boehm, and Rucker, JJ., concur.
Sullivan, J., dissents with separate opinion.

**Sullivan, Justice, dissenting.**

I respect the analysis of Michelle's sentence by the trial court and my colleagues and agree with it in many respects. But this Court has never affirmed a sentence of life without possibility of parole for a mother who has pled guilty to killing her child or stepchild and I do not believe we should do so here.

It is clear that the weight of the aggravating circumstances here is in the highest range. As such, I will not explore whether the tragic events leading up to Aiyana's death fit within the statutory definition of torture. Rather, I will focus my attention on the relative weight of the mitigating circumstances.

Michelle pled guilty to the crime charged. A guilty plea demonstrates a defendant's acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his or her character. Scheckel v. State, 655 N.E.2d 506, 511 (Ind. 1995). A guilty plea further extends a benefit to the State and the victim or the victim's family by avoiding a full-blown trial. Id. Under the circumstances of this case, I would assign weight to this mitigating circumstance in the low range.

The forensic psychologist who evaluated Michelle diagnosed her as suffering from several psychological disorders, some of which were caused by difficult experiences in childhood. Precedent supports consideration of "a disadvantaged background, or to emotional and mental problems" in assessing the appropriateness of a sentence. See California v. Brown, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Under the circumstances of this case, I would assign weight to this mitigating circumstance also in the low range.

Michelle's Presentence Investigation Report (PSI) indicates that although Michelle had had some previous encounters with the law, this was her first criminal conviction. In my view, absence of criminal history is the weightiest of all mitigating circumstances. See Prowell v. State, 687 N.E.2d 563, 572 (Ind. 1997) (Sullivan, J., dissenting), post-conviction relief granted, 741 N.E.2d 704 (Ind. 2001).

10

Most troubling to me about this case is the role and relative punishment received by Michelle's husband, Christian Gauvin. Prior to meeting and marrying Christian, Michelle and another man had had two children. The record indicates that Michelle was a good mother to these children. (The PSI reports that child protective services authorities never had to intervene on behalf of these two children.)

Aiyana was the daughter of Christian and another woman. Aiyana's mother was unable to care for her properly and Christian was given custody in a CHINS proceeding prior to Christian and Michelle meeting. Christian and Michelle were married in February 2005, but the record suggests that for perhaps a year before that, they had been living together with Aiyana and Michelle's two children. The record indicates to me that during this relationship, Christian brought violence into Michelle's life. Michelle herself reported that she had been abused and controlled by Christian. These reports were documented by the forensic psychologist, and some of them were substantiated by Michelle's medical records and by other parties the psychologist interviewed. Michelle also reported that Christian had been the source of much of the physical abuse inflicted on Aiyana. (Christian contends to the contrary.) Christian does have a prior conviction for Battery on a Child, apparently for beating up a 13-year-old boy with whom he was angry.

Christian was charged in connection with Aiyana's death for Class A Neglect of a Dependent, for which he was sentenced to the maximum term of 50 years. See Gauvin v. State, 878 N.E.2d 515 (Ind. Ct. App. 2007), trans. denied (Mar. 13, 2008). I respect the determination of the trial court and my colleagues that Michelle should spend the rest of her life in prison without possibility of parole. But in my view, Christian participated in the same series of acts as Michelle and her sentence is disproportionately severe. The Probation Department recommended that Michelle not be sentenced to life without parole but instead that she be sentenced to 105 years (consecutive maximum sentences of 65 years for murder, 20 years for confinement, and 20 years for neglect of a dependent). I would follow the recommendation of the Probation Department except that I would impose the sentences concurrent to one another for a total of 65 years.