**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWEN**
Public Defender of Indiana

**JOANNA L. GREEN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Apr 17 2014, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHELLE D. GAUVIN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1306-PC-542 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-0807-PC-00006

**April 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Michelle Gauvin appeals the denial of her petition for post-conviction relief. She raises multiple issues for our review, which we consolidate and restate as:

> 1. Whether there was an adequate factual basis for Gauvin's guilty plea;
> 2. Whether the trial court committed structural errors in sentencing Gauvin to life without possibility of parole ("LWOP"); and
> 3. Whether Gauvin received effective assistance of counsel at trial and on appeal.

Concluding there was an adequate factual basis for the guilty plea, the claim of structural error was an issue for direct appeal and not appropriate for post-conviction relief, and Gauvin was not denied effective assistance of counsel at trial or on direct appeal, we affirm.

## Facts and Procedural History

The underlying facts of Gauvin's case were laid out in her direct appeal to the Indiana Supreme Court:

> Aiyana Gauvin was born on December 12, 2000, to Christian and Cassandra Gauvin. Christian obtained custody of Aiyana on December 19, 2003, following a Child in Need of Services proceeding. Christian and Aiyana subsequently moved in with Michelle, who married Christian on February 18, 2005. Michelle usually cared for Aiyana during the day; Christian cared for her in the evenings.
>
> According to the Gauvins, Aiyana began exhibiting intermittent behavioral problems in summer 2004. They claimed that Aiyana sometimes acted defiantly or disrespectfully, would not stop picking scabs on her feet or pulling out her own hair, urinated and soiled herself or her bed, fell over and injured herself, and refused to eat or ate condiments out of the refrigerator during the night.
>
> In response to Aiyana's behavior, the Gauvins resorted to a number of disciplinary measures. Michelle often tied up Aiyana and put duct tape over her mouth. At times, Aiyana was bound to a play gate, or to a booster seat using "zip-type child cabinet safety locks." Michelle frequently struck Aiyana with her hand or with pieces of a wooden cutting board. Michelle once bit Aiyana after the child had bitten her. Sometimes Michelle would

2

leave Aiyana in Christian's care when Michelle knew that Christian was "fed up with her" and likely to physically abuse the child.

Aiyana slept in a small room adjacent to the garage with a plywood floor but no insulation or forced air heating. The room was "exceptionally cold," about ten to fifteen degrees colder than the rest of the house. To prevent Aiyana from leaving the room during the night, the door was sometimes tied shut and anchored to a chair in the next room. Aiyana's room contained a bed without bedding, and she was prevented at times from sleeping even on that. Instead, she was forced to sleep bound either in her booster seat or on a small plastic tray in the corner on the floor.

The Gauvins also photographed Aiyana in varying states of bondage and forced her to view these pictures of herself. In one of the photographs, Aiyana is tied to her bed, wearing an overflowing diaper and lying in excrement. Another shows Aiyana bound to a play gate and staring at seven of these photographs. A digital camera found in the house contained a memory card with two photographs still saved on it.

On March 15, 2005, Michelle again tied Aiyana in the booster seat, with her hands restrained behind her. Christian was particularly "fed up" with Aiyana that night, and while Michelle was out of the house, he beat her severely. When Michelle returned, Aiyana was still bound to the chair. Michelle attempted to feed her a blended rice concoction, but Aiyana had difficulty eating and vomited. In response, Michelle covered Aiyana's mouth with duct tape and put her in her room to go to sleep, still strapped to the booster seat. Michelle admitted knowing that Aiyana "probably needed medical attention." Nonetheless, she left Aiyana in this condition all night.

The following morning, police and firefighters were called to the Gauvin home on a report that a four-year-old child was choking. On entering the home, emergency personnel found Aiyana not breathing, without a pulse, and cold to the touch. She had red marks and bruising on her face, arms, chest, and legs. Michelle explained to police that she had found Aiyana unresponsive on the floor of the child's room. When the coroner arrived, she observed that Aiyana was "obviously deceased."

An autopsy revealed that Aiyana died from acute subdural hemotoma [sic] caused by vigorous shaking or a blunt force injury to the head within twenty-four hours of her discovery. Numerous bruises, abrasions, and scratches covered Aiyana's body, varying in age from less than one day old to several days old. The pathologist estimated that Aiyana had been struck at least four or five times on her head and more than two dozen times on the rest of her body. Ligature marks were found on her wrists. She was malnourished and dehydrated.

In June 2005, as Michelle awaited trial for Aiyana's death, corrections officer Tammy Lynch of the Tippecanoe County Jail went to Michelle's cell to investigate a report that Michelle had attempted suicide. During their conversation, Michelle said she was "tired of all the shit and wanted to tell the truth." She then stated, "I killed the little bitch. The little

3

bitch pissed me off and I killed her."  Lynch asked Michelle "if she was [saying] she had killed that baby girl."  Michelle responded, "Yes I killed the little bitch and she deserved it too."

Gauvin v. State, 883 N.E.2d 99, 101-02 (Ind. 2008) (citations omitted).  Gauvin ultimately entered a plea of guilty to murder, confinement, and neglect of a dependent (the last two each a Class B felony), in exchange for the State not seeking the death penalty.  The trial court sentenced her to LWOP for murder, plus consecutive twenty year terms for confinement and neglect.  On direct appeal, Gauvin challenged the trial court's finding of torture as an aggravator and its rejection of extreme emotional disturbance as a mitigator.  She also challenged her sentence pursuant to Appellate Rule 7(B).  Our supreme court upheld her conviction and sentence, finding there was adequate proof to support torture and while the trial court considered the proffered mitigator, it did not abuse its discretion in rejecting it; and, under the facts of the case, her sentence was not inappropriate.  In dissent, Justice Sullivan reasoned that the mitigating circumstances in Gauvin's case were enough to persuade him she was deserving of sentence reduced to a term of years, instead of LWOP, especially since she pled guilty to the crime, her co-defendant had a much less severe sentence, and there had never been a similar case where this sentence was upheld.

Gauvin then filed a petition for post-conviction relief, alleging there was an insufficient factual basis for her guilty plea, errors in sentencing rendered her sentence unsound, and she received ineffective assistance of counsel at both trial and on appeal.  The post-conviction court denied her petition for post-conviction relief.  Gauvin now appeals.  Additional facts will be provided as necessary.

<u>Discussion and Decision</u>

At the outset, we note that in a petition for post-conviction relief, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. <u>Bethea v. State</u>, 983 N.E.2d 1134, 1138 (Ind. 2013). On appeal from the denial of relief, the petitioner stands in the position of one appealing from a negative judgment and "must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." <u>Id.</u>

## I. Factual Basis for the Guilty Plea

### A. Standard of Review

A factual basis for a guilty plea "exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty." <u>Butler v. State</u>, 658 N.E.2d 72, 77 (Ind. 1995). Requiring a factual basis ensures that, had the defendant stood trial, she could have been convicted. <u>Id.</u> at 76. A court does not need to find evidence proving guilt beyond a reasonable doubt to establish a factual basis for a plea. <u>Id.</u> at 77. A court's determination of an adequate factual basis arrives on appeal with a presumption of correctness. <u>Id.</u> We will review this determination for an abuse of discretion. <u>Id.</u>

### B. Gauvin's Guilty Plea

At the plea hearing, Gauvin's counsel questioned her to establish a factual basis for the guilty plea. Gauvin admitted to tying up Aiyana, paddling her with a wooden cutting board, leaving her with her abusive father, and failing to seek medical attention; she also admitting to knowingly undertaking all of those actions and that those actions

resulted in Aiyana's death.  Then, the entirety of the State's cross-examination consisted of the following:

> State:   Ms. Gauvin, you understand the nature of the charge of murder, do you not?
> Gauvin: Yes.
> State:   And you're admitting what's contained therein as true, is that correct?
> Gauvin: Yes.

Appellant's Appendix at 46.[1]  The court took the plea under advisement until the sentencing hearing.  At the sentencing hearing, the State presented nineteen witnesses, one of whom was corrections officer Tammy Lynch.  Lynch testified that in June 2005, Gauvin admitted to killing Aiyana.  Based on all of the evidence presented, the court concluded there was an adequate factual basis for Gauvin's guilty plea, found two statutory aggravating circumstances, and sentenced her to LWOP.

In her petition for post-conviction relief, Gauvin challenged the sufficiency of the factual basis, alleging there was little to no evidence to show whether Gauvin or Christian inflicted the fatal blow to Aiyana and the evidence was therefore insufficient to support the guilty plea.  In finding an adequate factual basis for the guilty plea, the post-conviction court found Gauvin admitted to beating Aiyana and "intentionally beat Aiyana knowing that the likely result was death."  Appendix to Brief of Petitioner-Appellant at 96.[2]

The trial court ensured the State explained to Gauvin, on the record, that Gauvin was alleged to have knowingly or intentionally killed another human; Gauvin stated she understood.  Appellant's Appendix at 35.  She subsequently admitted what was

---

[1] Appellant's Appendix refers to the appendix filed in the direct appeal.

[2] Appendix to Brief of Petitioner-Appellant refers to the appendix filed in the post-conviction relief appeal.

"contained therein as true." Id. at 46. Further, she admitted that the actions she knowingly undertook resulted in Aiyana's death. Id. at 45. A witness also testified that Gauvin admitted killing Aiyana. Based on Gauvin's admissions and the other evidence presented at the hearing, we conclude the evidence supported the post-conviction court's finding that the trial court did not abuse its discretion in finding an adequate factual basis for Gauvin's guilty plea.

## II. Structural Errors

Gauvin raises two claims which she frames as "structural errors" made by the trial court: the court impermissibly held Gauvin's exercise of her right to silence against her, and it considered irrelevant, inadmissible, and prejudicial evidence in sentencing her to LWOP. The scope of relief available in a petition for post-conviction relief is "limited to issues that were not known at the time of the original trial or that were not available on direct appeal. Issues available on direct appeal but not raised are waived, while issues litigated adversely to the defendant are *res judicata*." Ward v. State, 969 N.E.2d 46, 51 (Ind. 2012) (quotations and citations omitted). These issues were available on direct appeal and are therefore not appropriate for review in the post-conviction relief proceedings.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

Whether trial counsel offered effective assistance to a defendant is determined by a two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). We must assess whether counsel's performance was deficient and whether the defendant was prejudiced as a result of the deficient performance. Id. at 687. "A deficient performance

is that which falls below an objective standard of reasonableness. Prejudice exists when there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citations and quotations omitted). If it is easier to dispose of an ineffective assistance claim based upon a lack of prejudice without addressing counsel's performance, that is the course to follow. Strickland, 466 U.S. at 697.

### B. Ineffective Assistance of Trial Counsel

Gauvin was represented by three public defenders, all of whom were Criminal Rule 24 qualified.[3] The goal in Gauvin's case was always to avoid the death penalty, which counsel achieved through the plea agreement. Gauvin now claims, despite reaching their goal, trial counsel was ineffective for three reasons, and the cumulative effect was sufficient to cause her prejudice. We will address each in turn.

### 1. Failure to Object

Gauvin first argues her trial counsel was ineffective for failing to object to irrelevant and prejudicial evidence because they did not understand the penalty phase in capital sentencing is different than the penalty phase in ordinary felony sentencing. In order to prevail on a claim of ineffective assistance due to failure to object, Gauvin must prove that the objection would have been sustained and that she was prejudiced by the failure. Timberlake v. State, 690 N.E.2d 243, 259 (Ind. 1997), cert. denied, 525 U.S. 1073 (1999).

---

[3] Criminal Rule 24 creates standards for criminal litigation experience, training requirements, workload, and compensation of counsel who are appointed to represent defendants in capital cases.

Gauvin argues the State is limited only to relevant evidence and arguments which prove statutory aggravators in a capital case; here, that the victim was under twelve and that the victim was tortured while she was alive. As a general proposition, this is correct (though evidence relevant to mitigating factors is also admissible). See Bivins v. State, 642 N.E.2d 928, 955, 957 (Ind. 1994) ("When the death sentence is sought, courts must henceforth limit the aggravating circumstances eligible for consideration to those specified in the death penalty statute . . . . [A]dmissibility of the . . . evidence in the present case hinges upon its relevance to the death penalty statute's aggravating and mitigating circumstances."), cert. denied, 516 U.S. 1077 (1996). "A sentence of life imprisonment without parole is imposed under the same standards and is subject to the same requirements as the death penalty." Holsinger v. State, 750 N.E.2d 354, 361 (Ind. 2001). However, when testimony is offered at a sentencing hearing in which the defendant is to be sentenced for both a capital offense and another crime, the evidence may be admissible for consideration on the other crime under Indiana Code section 35-38-1-7.1 (2005). Veal v. State, 784 N.E.2d 490, 493 (Ind. 2003). "There is a presumption that a court in any proceeding that is tried before the bench rather than before a jury renders its decision solely on the basis of relevant and probative evidence. The same is true of a sentencing hearing." Id. (citations and quotations omitted). Gauvin acknowledges the trial court recognized the statutory limitations on its considerations during a pre-trial conference and during the sentencing hearing.[4] Brief of Petitioner-Appellant at 8.

---

[4] Indeed, the trial court's comments clearly reflect it was aware of the requirements in balancing the aggravating and mitigating factors:

Gauvin specifically objects to the admission of testimony from first responders and Scott Hayden, the father of Gauvin's two other children. The first responders testified about the crime scene as they found it and incidents in which they had interacted with Gauvin previously. Hayden testified about his prior relationship with Gauvin.

We need not address whether the objections to this testimony would have been sustained because Gauvin was not prejudiced from the admission of the challenged statements. See Strickland, 466 U.S. at 697. Even if we found that an objection would have been sustained, there is ample evidence properly admitted that Aiyana was under twelve (indeed, this was undisputed) and Gauvin tortured Aiyana while she was alive; a finding of even one of these statutory aggravators was sufficient to uphold Gauvin's sentence of LWOP. Gauvin's counsel therefore was not ineffective in failing to object to these statements.

### 2. Failure to Investigate and Cross-Examine

Gauvin next claims that her trial counsel was ineffective for failing to investigate claims of bias and thoroughly cross-examine some of the State's witnesses, in particular, Kathleen White and Tammy Lynch. Regarding the performance prong, counsel "is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Ward, 969 N.E.2d at 51 (quotation omitted).

The procedure for life without parole requires the Court to aggravate only based upon the specific alleged factors and to mitigate upon any factors that the defendant chooses to present . . . I should, to the extent that I can, make my decision solely upon the evidence that is presented to me under those criteria.

Appellant's App. at 47.

White was Gauvin's neighbor and testified about the lack of racial animus in the neighborhood. She also testified about instances where she saw Gauvin interact with Aiyana. Gauvin's counsel failed to elicit testimony from White admitting she called Gauvin a racial slur as documented in a police report. Gauvin argues no strategic move could have led to the decision not to cross-examine White more effectively because the racial animus was to prove part of a mitigator, not attack White. Lynch, as mentioned above, testified that Gauvin admitted to killing Aiyana in her presence. Gauvin argues that circumstances in Lynch's personal life biased Lynch against Gauvin, and that "Lynch might have been influenced, even subconsciously, by her background in testifying against someone accused of child abuse." Brief of Petitioner-Appellant at 12. The post-conviction court found that it was merely a tactical decision not to cross-examine them at length, and it would have been an "excessive stretch of logic" to argue Lynch was so influenced by events in her personal life as to lie about Gauvin's statements. App. to Brief of Petitioner-Appellant at 97.

The failure to cross-examine White more thoroughly caused no prejudice. One of Gauvin's proposed mitigators was that after Gauvin was adopted, she was teased and called "an [O]reo," Brief of Petitioner-Appellant at 12, and she had difficulties growing up as a bi-racial child in her neighborhood and at school. By extension, the racial tensions in her neighborhood as an adult exacerbated that problem. Gauvin alleges White's testimony undermined this piece of mitigation and White should therefore have been impeached on the issue of the neighborhood atmosphere. Gauvin has not shown a reasonable probability that the result of the proceeding would have been different if White had been impeached by the police report. The trial court found in its sentencing

11

order that Gauvin had a "tragic childhood" that resulted in her Borderline Personality Disorder. Appellant's App. at 73. This shows that the court accepted, at least to some extent, Gauvin's proposed mitigator. Thus, we are not led wholly to a conclusion opposite that reached by the post-conviction court, and Gauvin was not denied effective assistance of counsel in this respect.

With regard to Lynch's testimony, we do not believe Gauvin has established that counsel's performance in cross-examining Lynch fell below an objective standard of reasonableness. Lynch testified about speaking with Gauvin to investigate whether Gauvin had attempted suicide in her cell. During that conversation, Gauvin admitted to Lynch that she killed Aiyana. Lynch then testified that immediately after this conversation, she spoke with her sergeant, reported the conversation, and then filed a report about the incident. Counsel thoroughly cross-examined Lynch to explore whether anyone had followed up with Gauvin's admission, or whether any other inmates who were in the cell block also heard the confession. Gauvin claims that counsel was deficient because he should have explored Lynch's potential bias on cross-examination as Lynch had an abusive situation in her own family. At the post-conviction hearing, Gauvin's trial counsel stated he did not think Lynch's family history would have a bearing on her truthfulness. Transcript of Post-Conviction Relief Hearing at 26. We give deference to trial counsel's strategy and tactics and conclude the post-conviction court did not err in concluding trial counsel used reasonable professional judgment and did not render ineffective assistance of counsel.

### 3. Failure to Present Mitigating Evidence

Finally, Gauvin argues trial counsel was ineffective for failing to present mitigating evidence from Gauvin's brother that Gauvin intended to install flooring in Aiyana's bedroom and was going to finish the conversion process from garage to bedroom. The alleged prejudice to Gauvin was that the State made an issue of the cold, bare conditions of the room and the court considered these conditions in its sentencing order. The post-conviction court determined that this mitigating evidence would not "undo the fact that the victim was required to sleep there when [Gauvin's] own children had their own rooms which were finished, furnished, and warm while the victim was not even permitted to sleep in her own bed." App. to Brief of Petitioner-Appellant at 97. Gauvin hoped to present mitigation evidence that in the future Aiyana would not have had to live in such deplorable conditions. However, she does not dispute the fact that at the time Aiyana was tortured and killed, Aiyana was forced to live in an unfinished room that was colder than the rest of the house while Gauvin's two other children each enjoyed their own bedroom. Gauvin has not, and cannot, show the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Bethea, 983 N.E.2d at 1138. She was not denied effective assistance of counsel by the failure to present this proposed mitigating evidence.

### 4. Cumulative Effect

Gauvin argues the cumulative effect of the failure to object, investigate, cross-examine, and offer evidence in mitigation amounted to ineffective assistance of counsel. We find that each claim does not rise to the level of ineffective assistance; we further

13

conclude that cumulatively, the claims fail to show Gauvin received ineffective assistance of counsel.

## C. Ineffective Assistance of Appellate Counsel

### 1. Structural Errors

As noted in Part II, *supra*, Gauvin claims there were structural errors that affected her sentence: the court impermissibly held Gauvin's exercise of her right to silence against her, and it considered irrelevant, inadmissible, and prejudicial evidence in sentencing her to LWOP. While these claims were forfeited for not being raised on direct appeal, we may analyze them in the context of ineffective assistance of counsel for failure to raise the issues.

In addition to the Strickland two-pronged standard to evaluate counsel's performance, there are three recognized categories of alleged appellate counsel ineffectiveness: denying access to an appeal, failing to raise issues, and failing to present issues competently. Timberlake v. State, 753 N.E.2d 591, 604 (Ind. 2001), cert. denied, 537 U.S. 839 (2002).

> When reviewing a claim of ineffective assistance of appellate counsel regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance. . . To prevail upon the claim of ineffective assistance of appellate counsel, the petitioner must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.

Seeley v. State, 782 N.E.2d 1052, 1059 (Ind. Ct. App. 2003), trans. denied.

### a. Failure to Raise Consideration of Gauvin's Right to Silence on Appeal

Gauvin argues her appellate counsel was ineffective for failing to raise the issue of the trial court allegedly holding it against her for not making a statement in allocution at the end of the sentencing hearing, framing it as a violation of her Fifth Amendment right to silence.[5] The challenged portion of the sentencing order read:

> The Court also rejects the claim that Michelle played a minor role in a murder carried out by an accomplice. Because neither Michelle nor Christian have been truthful, the Court cannot determine precisely what happened. Michelle rejected the opportunity for [allocution]. The Court finds that Michelle intentionally inflicted the fatal blows. So whatever Christian's culpability, and he has not yet been tried, Michelle is fully responsible for Aiyana's death.

Appellant's App. at 73. The post-conviction court concluded that the challenged statements in the sentencing order simply observe that neither Gauvin nor Christian provided an account consistent with Aiyana's injuries and summarize why circumstantial evidence in this case was needed.

Gauvin asserts the judge's comment was akin to denying her right to exercise her Fifth Amendment right to not incriminate herself. Aside from asserting that the trial court used Gauvin's silence against her in the sentencing decision, Gauvin does not develop any further argument on this point of how appellate counsel was ineffective for not raising this issue on appeal. Gauvin has failed to show how the evidence as a whole

---

[5] Gauvin does not challenge her counsel as ineffective for failing to prepare her to make a statement in allocution. Gauvin's counsel was "surprised" by the chance for Gauvin to offer a statement in allocution at the sentencing hearing, because he did not believe Gauvin had that right. Brief of Petitioner-Appellant at 15. Counsel was correct about the law at the time. During Gauvin's plea hearing in 2006, controlling authority in Indiana was that the right of allocution applied only to those defendants who entered pleas of not guilty and, after a trial, received a verdict or finding of guilt. See Minton v. State, 400 N.E.2d 1177 (Ind. Ct. App. 1980), disapproved of by Biddinger v. State, 868 N.E.2d 407 (Ind. 2007). The right did not belong to a defendant who plead guilty. Fuller v. State, 485 N.E.2d 117, 122 (Ind. 1985) overruled by Biddinger, 868 N.E.2d 407. The year after Gauvin's plea hearing, our supreme court concluded when a defendant who plead guilty makes a request to the court for the opportunity to speak, the request should be granted and expressly overruled and disapproved of prior cases to the contrary. Biddinger, 868 N.E.2d at 412.

leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

### b. Failure to Raise Admissibility of Certain Evidence on Appeal

Gauvin next argues that appellate counsel was ineffective for failing to raise the issue of irrelevant, inadmissible, and prejudicial evidence being admitted because trial counsel failed to object. We addressed those claims in the context of ineffective assistance of trial counsel, Part III-B-1, *supra*. The reasoning by which we found trial counsel did not render ineffective assistance of counsel applies equally to appellate counsel on the same issues. Counsel was not ineffective with respect to these claims.

### 2. Disparate Sentencing

Gauvin finally argues that her sentence was disproportionately severe compared to Christian's sentence of fifty years for Class A felony neglect of a dependent and that counsel was ineffective for failing to raise this issue on appeal. This is separate from the argument made on her direct appeal pursuant to Appellate Rule 7(B). Gauvin's counsel knew this was an issue that could have been raised on direct appeal; he considered raising it, but after researching the issue, determined the law was "horrible" and he could not make a cogent argument. Tr. at 18. He decided then to allude to the issue in his brief and discuss it more thoroughly at oral argument. Justice Sullivan, in dissent, agreed with the argument that the punishment was disproportionately severe in light of Christian's fifty-year sentence. Gauvin, 883 N.E.2d at 105 (Sullivan, J., dissenting). Gauvin's appellate counsel's strategy was to avoid drawing attention to negative law that could hurt Gauvin's position. His choice to frame the argument in the context of a 7(B) sentence reduction was a reasonable strategy after concluding the law on proportionality was not

favorable to her case. Gauvin therefore did not receive ineffective assistance of appellate counsel for failure to raise the disproportionality of the sentence on appeal.

## Conclusion

Concluding there was an adequate factual basis for the guilty plea, the claim of structural error was an issue for direct appeal and not appropriate for post-conviction relief, and Gauvin was not denied effective assistance of counsel at trial or on direct appeal, we affirm.

Affirmed.

BARNES, J., and BROWN, J., concur.